# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CALIFORNIA CATTLEMEN'S ASSOCIATION, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) Case No: 1:17-cv-01536-TNM |
| v. | ) |
| RYAN ZINKE, *et al.*, | ) **REPLY OF APPLICANT-**<br>) **INTERVENORS TO FEDERAL**<br>) **DEFENDANTS' OPPOSITION TO** |
| Defendants, | ) **MOTION TO INTERVENE** |
| and | ) |
| CENTER FOR BIOLOGICAL DIVERSITY, CENTRAL SIERRA ENVIRONMENTAL RESOURCE CENTER, and WESTERN WATERSHEDS PROJECT, | )<br>)<br>)<br>) |
| Defendant-Intervenor-Applicants. | ) |

## TABLE OF AUTHORITIES

**Cases**

*Am. Horse Prot. Ass'n v. Veneman*,
  200 F.R.D. 153 (D.D.C. 2001) ............................................................................................. 5, 6

*Associated Dog Clubs of N.Y. State v. Vilsack*,
  44 F. Supp. 3d 1 (D.D.C. 2014) ................................................................................................ 4

*Atl. Sea Island Grp. LLC v. Connaughton*,
  592 F. Supp. 2d 1 (D.D.C. 2008) .............................................................................................. 6

*\*Crossroads Grassroots Policy Strategies v. FEC*,
  788 F.3d 312 (D.C. Cir. 2015) .................................................................................................. 4

*Ctr. for Biological Diversity v. United States EPA*,
  274 F.R.D. 305 (D.D.C. 2011) .................................................................................................. 7

*Friends of Animals v. Kempthorne*,
  452 F. Supp. 2d 64 (D.D.C. 2006) ............................................................................................ 5

*\*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ....................................................................................... 3, 4, 5, 6

*General Land Office of the State of Texas v. FWS*,
  No. A-17-CA-538-SS, slip op (W.D. Tex. Nov. 30, 2017) ....................................................... 6

*\*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967) ............................................................................................... 5, 7

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) .................................................................................................................. 4

**Statutes**

16 U.S.C. § 1533(b)(1) .................................................................................................................. 6
16 U.S.C. § 1533(b)(2) ............................................................................................................... 4, 6

**Other Authorities**

79 Fed. Reg. 24,256 (April 29, 2014) ............................................................................................ 3
82 Fed. Reg. 58,050 (Dec. 18, 2017) ............................................................................................. 5

## **INTRODUCTION**

For more than fifteen years, Applicant-Intervenors Center for Biological Diversity *et al.* ("Center") have worked to protect the Sierra Nevada yellow-legged frog (*Rana sierrae*), the northern population of the mountain yellow-legged frog (*Rana muscosa*), and the Yosemite toad (*Anaxyrus canorus*), all of which have suffered massive reductions in geographic range and declines in overall populations. 79 Fed. Reg. 24,256, 24,261 (April 29, 2014). A primary focus of these efforts was the Center's petitions to Defendant U.S. Fish and Wildlife Service ("Service") to list these species under the Endangered Species Act ("ESA"). Despite the dire status of these amphibians and the Center's listing petitions, the Service did not propose their listings until thirteen years later. And not until the Center brought litigation that required the Service to make determinations on these listings.[1] As a result of this settlement agreement, the Service listed the species in 2015 and finalized the designation of their critical habitat in 2016. In this lawsuit, the California Cattlemen's Association challenges the Service's designation of critical habitat for the species.

In opposing the Center's motion to intervene, the Service does not dispute that the Center satisfies the first three factors to qualify for intervention as of right. ECF No. 30, at 2. It contests only the fourth factor: that its "interest is adequately represented by the existing parties." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (noting standard). As further explained below, the Service does not adequately represent the Center, as the Service is mandated to take into account a much broader range of interests than the Center's narrow interest in science-based species conservation, especially in making critical habitat decisions. Even if the Court were to hold that the Center did not qualify for intervention as of right, it should alternatively grant permissive intervention because the Center clearly has an interest in the claims at issue in this case.

---

[1] Order Granting Joint Motion for Approval of Settlement Agreement and Order of Dismissal, *In Re Endangered Species Act Section 4 Deadline Litigation*, No. 10-377 (D.D.C. Sept. 9, 2011), ECF No. 56.

**ARGUMENT**

A.   **The Center Qualifies for Intervention as of Right.**

The fact that an applicant to intervene and a federal defendant "share a general interest in the legality of a program or regulation does not mean [applicant-intervenors'] interests coincide so that representation by the agency alone is justified." *Associated Dog Clubs of N.Y. State v. Vilsack*, 44 F. Supp. 3d 1, 6–7 (D.D.C. 2014). As the D.C. Circuit has held, "a shared general agreement . . . does not necessarily ensure agreement in all particular respects about what the law requires." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (cautioning that a "general alignment" of purpose is not "dispositive"). Rather, to satisfy the fourth factor for intervention as of right, the Center must prove only that the Service "may" not adequately represent their interests, and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Here, as the D.C. Circuit has noted, the ESA requires the Service to generally "represent[] the interests of the American people." *Fund for Animals*, 322 F.3d at 736. To do so the Service must consider, when defending a critical habitat designation, not only the species' conservation using the best available science, but also the designation's "economic impact, . . . impact on national security, and any other relevant impact[.]" 16 U.S.C. § 1533(b)(2). Given this broad mandate, the Service cannot—or at least *may* not—adequately represent the "more narrow" interests of the Center, which prioritize science-based species conservation. *See Fund for Animals*, 322 F.3d at 737 (finding that a federal agency and two existing defendant-intervenors may not adequately represent the interests of yet a third defendant-intervenor). As the Center established in its motion to intervene, its interests and the Services' interests have diverged in the past and may diverge again in the future, including due to new priorities under the current Administration. *See* ECF No. 14, at 15–16.

Applicant Intervenor-Defendants include non-profit, public interest groups with a focused interest in conserving the Sierra frogs and their critical habitat. This focused interest more than adequately demonstrates that there *may* be divergence during the course of litigation, and that is

4

all that is required. *See, e.g.*, *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006) (concluding that the Service may not adequately represent interests of hunting or conservation groups seeking to defend agency's decision to exclude certain species, when bred in captivity, from the ESA's take prohibition); *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001) (concluding that the Department of Agriculture may not adequately represent non-profit organization when agency was charged with balancing a "broad spectrum of interests," including interests opposed to the organization).

The Service asserts the Center fails to identify a specific issue on which their positions would differ in the context of the Plaintiffs' claims in this case, which concerns a regulatory flexibility analysis. ECF No. 30, at 2–3. At the outset, as the D.C. Circuit has noted, the "tactical similarity of the *present* legal contentions . . . does not assure adequacy of representation." *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967) (emphasis added). Instead, the Court is to consider whether intervention is appropriate in the context of the prospective case as a whole, not on the basis of support for a motion. *Id.*; *see also Fund for Animals*, 322 F.3d at 736 (ruling that existing representation was not adequate because it was "not hard to imagine how the interests of the [applicants] and those of the [Service] might diverge during the course of litigation . . . .").

But even in the context of the pending motion to dismiss, the interests of the Center and the Service already portend divergence. While the Service and the Center both seek to avoid vacatur of the critical habitat designation, the Center would also vigorously oppose any effort by Plaintiffs to enjoin the effectiveness of the designation pending a new analysis, should the Court decide that the regulatory flexibility analysis is arbitrary and capricious. In contrast, the Service has not asserted that it would oppose such an injunction. ECF No. 30, at 2. Indeed, that is the approach the Administration has taken in other cases challenging adoption of rules during the prior Administration. *See*, *e.g.*, 82 Fed. Reg. 58,050 (Dec. 18, 2017) (EPA unilaterally suspends duly-promulgated methane rule pending new analysis). The Service fails to prove that its interests and the interests of the Center may not similarly diverge in this litigation and, as a result, the Center satisfies the only contested factor for the right to intervene.

The Service relies upon a case dealing with the listing of the golden-cheeked warbler to argue that it would adequately represent the Center's interests in this critical habitat designation. ECF No. 30, at 3, citing ECF No. 30-1[2]. While that case also concerns an action under the ESA, it is distinguishable because the Service's decision about whether to list a species under the ESA must be based "solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1). As discussed above, when designating critical habitat the Service considers a much wider range of information and potential impacts, such as economic impacts, in addition to the best scientific data. *Id.* § 1533(b)(2). In this situation, the Service's mandate to consider a broader set of factors for critical habitat makes it unlikely to adequately represent the Center's narrow interests which prioritize species conservation.

Moreover, the Service's suggestion that the Court deny the motion to intervene without prejudice is untenable. Courts in this Circuit consider the "practical consequences of denying intervention." *Fund for Animals*, 322 F. 3d at 735. Courts also consider "the convenience to the movant of permitting intervention . . . as opposed to denying intervention merely because future challenges remain available." *Am. Horse Prot. Ass'n*, 200 F.R.D. at 158.[3] If the Court does so, and grants the Service's motion to dismiss the case, then the Center is not a party to a likely appeal. Similarly, the Service and Plaintiffs could enter a settlement agreement, and without party status the Center could not file objections to any such settlement. For all these reasons, the Court should grant the Center's motion to intervene as of right.

---

[2] *General Land Office of the State of Texas v. FWS*, No. A-17-CA-538-SS, slip op (W.D. Tex. Nov. 30, 2017).

[3] *See also Atl. Sea Island Grp. LLC v. Connaughton*, 592 F. Supp. 2d 1, 7 (D.D.C. 2008) (finding that "[w]here the relief sought is to set aside agency action that affects a proposed intervenor, such relief could practically impair the proposed intervenor's interest since the proposed intervenor could no longer rely on the agency's announced decision and would need to restart the administrative process").

**B       The Court Should Allow the Center to Intervene Permissively.**

The Service opposes permissive intervention as well, asserting that the Center "fail[s] to point to any specific interest they have in the application of the RFA to the critical habitat designation." ECF No. 30, at 4. Courts may permit anyone to intervene "if his claim and the main action have a common question of law or fact." *Neusse*, 385 F.2d at 704. Although Rule 24(b) speaks in terms of a "claim or defense[,]" the D.C. Circuit does not interpret that language strictly. *Id.* Instead, it has adopted a "flexible reading of Rule 24(b)'s 'claim or defense' language[.]" *See Ctr. for Biological Diversity v. United States EPA*, 274 F.R.D. 305, 312 (D.D.C. 2011). The Center clearly satisfies this standard as its defenses share a factual and legal basis with Plaintiffs' claims and possible defenses by the Service to those claims. As discussed above, the Center also clearly has an interest in the questions of law and fact at issue in this case.

Moreover, the Service's argument attempts to divorce the procedural legal question on the merits from the relief that Plaintiffs seek. Such bifurcation makes little common or legal sense, and the Service cites no authority to support it. The first line of the Service's motion to dismiss states that "Plaintiffs seek to invalidate, in whole or in part, the designation of critical habitat for three amphibian species that are protected" under the ESA. ECF No. 11-1, at 8. The Service does not dispute that the Center has a clear specific interest in designated critical habitat and the benefits it provides the species. *See* ECF No. 14, at 11–13. In addition, the Service's assertion that limiting intervention to the remedy phase would "avoid duplicative arguments on the merits," ECF No. 30, at 5, presumes identical interests, which the Center has already established does not exist.

Additionally, beyond Plaintiffs' as-applied challenge, they also ask this Court to "[d]eclare [that] the designation of critical habitat under the ESA is not categorically exempt from the requirements of Sections 603 and 604 of the RFA because the designation only directly regulates federal agencies and not small entities[.]" Complaint 13, ECF No. 1. Such a declaration would undermine the effective implementation of the ESA and bog down efforts to provide imperiled species with much needed protections. The Center has a strong interest in defending

7

against any such outcome. *See e.g.* Miller Decl. ¶ 2, ECF No. 14-6. As such, the Center shares a common question of law with the Service and has a clear interest in not only the as-applied challenge in this case, but also more generally in the application of the RFA to the ESA. On these bases, the Center should be granted permissive intervention.

## **CONCLUSION**

For the reasons set forth above, the Center respectfully requests that this Court grant its motion to intervene as of right or, in the alternative, permissive intervention.

Dated: January 19, 2018.                    Respectfully submitted,

*/s/ Jennifer L. Loda*
Jennifer L. Loda, *pro hac vice*
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94609
Telephone: (510) 844-7136
Email: jloda@biologicaldiversity.org

Ryan Adair Shannon
D.C. Bar No. OR00007
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Phone: (214) 476-8755
Email: rshannon@biologicaldiversity.org

Peter M.K. Frost, *pro hac vice*
Western Environmental Law Center
P.O. Box 10947
Eugene, Oregon 97440
Telephone: (541) 359-3238
Email: frost@westernlaw.org

Paul Ruprecht, *pro hac vice*
Western Watersheds Project
P.O. Box 12356
Reno, NV 89510
Telephone: (208) 421-4637
Email: paul@westernwatersheds.org

*Attorneys for Defendant-Intervenor Applicants*

9